## JACKSON *v.* THE STATE.

1. There was evidence which authorized the verdict.
2. In the absence of a timely and appropriate request for fuller instructions, it can not be held that the court erred in omitting to charge that under the circumstances of the case on trial the existence of the sudden heat of passion supposed to be irresistible might mitigate, though it would not justify, the offense of slaying one who had attempted an outrage upon the wife of another, and thus reduce the offense from murder to voluntary manslaughter.

Criminal Law, 17 C. J. p. 358, n. 46; p. 359, n. 64.

Homicide, 30 C. J. p. 37, n. 13; p. 87, n. 10, 11; p. 310, n. 25; p. 408, n. 26.

3. The instruction that the law will sometimes excuse the husband for slaying the seducer of his wife after the guilty act is over, if he acts promptly and in the burst of that passionate indignation which overwhelms him, if such be the case, upon discovering the guilty act, while erroneous, affords no ground for complaint in this case, because the charge was more favorable to the accused than he was entitled to receive.

No. 5763. SEPTEMBER 9, 1927.

Murder. Before Judge Knight. Berrien superior court. November 12, 1926.

*Jeff S. Story* and *W. D. Buie,* for plaintiff in error.

*George M. Napier, attorney-general, H. C. Morgan, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

RUSSELL, C. J. The plaintiff in error, Melton Jackson, was convicted of the offense of murder, without a recommendation. His motion for a new trial was overruled, and he excepted. From the brief of evidence it appears that the accused shot and killed Ed Hawkins. The circumstances at the precise time of the homicide, as developed in the evidence, do not appear to present any justification for the killing, but the defendant in his statement says that the deceased attempted to draw a weapon, and he claims to have fired the fatal shot under the fears of a reasonable man that he was in imminent danger of losing his life. There was testimony in behalf of the defendant that the deceased, Hawkins, had gone to the home of the defendant during his absence on the Sunday in question, and had made an assault upon his wife with the intent of having sexual intercourse with her. A witness was introduced to whom the wife made complaint immediately after the departure of Hawkins from her dwelling, and according to the testimony for the prosecution Hawkins did not deny the charge when it was made by Jackson, the husband, but insisted that they "reason" or talk the matter over. The general grounds of the motion for a new trial need not be discussed, because this feature of the motion is not argued in the brief. The special grounds of exception here insisted upon are contained in the amended motion for a new trial.

In the first ground of the amendment to the motion for a new trial it is insisted that the defendant relied on two defenses: (1) that Hawkins "was about to commit a felony upon" him, "or at least the circumstances were of such nature that they were sufficient to excite the fears of Melton Jackson, he being a reasonable man, that a felony was about to be committed upon him,

.  .  and that he shot Ed Hawkins acting under those fears, and not in a spirit of revenge." (2) "That Melton Jackson had been away from his home on the day of the homicide until shortly before the killing took place, and upon his return home his wife informed him that Ed Hawkins had during his absence entered his home and attempted to commit an outrage upon her person by seizing her and attempting to either outrage her or otherwise to have carnal knowledge of her forcibly and against her will, and that immediately after she told him he went up to the quarters, he then being in a sudden heat of passion, to hunt the said Ed Hawkins, that he might give him satisfaction for such assault and outrage upon his wife, and that he met up with him in not over one half hour after his wife had made the disclosure to him, and as a result of that sudden, violent impulse of passion, there not having intervened a sufficient time between his learning of said assault and his meeting with the deceased for the voice of reason and humanity to be heard, and killed the deceased, and that  .  . those circumstances would at least mitigate the killing to voluntary manslaughter." It is insisted that while the judge charged and correctly instructed the jury as to the principles of law applicable to the first contention, he nowhere in his charge presented to the jury the second contention, "but rather negatived that contention." It is assigned as error that the jury should have been instructed upon the latter contention.

The second ground of the amendment to the motion for a new trial is based upon the contention that if the defendant was not entitled to a verdict of not guilty, the evidence in the case as well as the statement of the defendant "almost demanded" a verdict of voluntary manslaughter. The complaint is made that the instructions as to voluntary manslaughter were so mixed up with the charge on the subject of murder that the jury were confused, and that "it was error to so mix it that the minds of the jury could be easily confused on those different salient points."

In the third ground complaint is made that the judge nowhere charged the law as laid down in section 65 of the Penal Code, so as to apply the exception "other equivalent circumstances to justify the existence of passion and to exclude all idea of deliberation or malice, either express or implied," otherwise than to the charge of murder, and that such failure took away the right of the jury

to consider and deliberate in reference to manslaughter, "as to whether the killing was the result of a sudden, violent impulse of passion, supposed to be irresistible, but could only consider that instruction along with the subject of wilful murder, and hence the defendant never did and never could get such instruction in regard to the real contention of the defendant in the case, fully segregated from its connection with the offense of wilful murder." It is insisted that "sections 65 and 75 must in this respect be considered together, and be construed together and aside from justification, and in regard to mitigation only, and the jury should have had the full benefit of separate instructions upon the two grades of homicide."

In the fourth ground of the amended motion (though numbered 3) exception is taken to the charge that "The law will sometimes *excuse* the husband for slaying the seducer of his wife after the guilty act is over, if he acts promptly and in the burst of that passionate indignation which overwhelms him, if such be the case, upon discovering the guilty act, if such act has been committed, or the circumstances are such as to justify a reasonable mind in believing that such an act has immediately taken place." The error assigned upon this point is placed upon three grounds: (1) Because by the use of the word "sometimes," and not at all times, the jury would not know when it would excuse and when not excuse. (2) Because the instruction was limited to excusing the slayer, but made no reference to mitigation of the offense and reducing the homicide to a lower grade without excusing it. (3) Because the instruction gives "a state of facts justifying a verdict of voluntary manslaughter, and yet limits the instruction only to entire justification, without in connection therewith stating that the jury would be authorized under such state of facts to find the defendant guilty of only the lower grade of homicide, voluntary manslaughter.

In the fifth ground, numbered 4, error is assigned upon the following instruction: "In other words, a man may in good faith defend his wife's virtue on the same principles of reason and justice that he might defend his own person, and be justifiable in doing so, if the killing be necessary in order to prevent adultery or sexual intercourse on the part of the person killed with the wife of the person killing; but the law will not justify him in deliberately killing a man for a past or accomplished act of sexual intercourse

with his wife. The killing, after such an act has been completed, or when it is not imminent, or about to take place, is not one of the instances which stand upon the same footing of reason and justice as those enumerated in the Code as justifiable homicide." There are two exceptions to this instruction. While admitting that the charge as applied to justification is correct, it is assigned as error that the law is an integral part of the law of voluntary manslaughter, and therefore the charge should have been followed with an instruction as to its application to that lower grade of homicide, to the effect that, while it would not justify in such a case, "it does mitigate whenever he [the accused] gets the information and acts while in that sudden heat of passion supposed to be irresistible." It is further complained that the instruction "might have left the minds of the jury uncertain" whether there was any mitigating effect on the killing when the same was done after the sexual act had been accomplished.

In another ground complaint is made that the court instructed the jury as set forth in the ground immediately preceding, for the second time, near the completion of his charge. This instruction is assigned as error, "because, by repeating this charge as a summary right at the conclusion of the instructions or near the conclusion, it unduly emphasizes that view of the case and forces on the minds of the jury by repetition and emphasis the idea that such charge is the chief law of the case in that connection, and thus circumscribes the rights of the jury in their deliberation to that one idea, that if the killing was after the adultery or outrage or attempted outrage there could not only be no justification but there could be no mitigation, and that they must under those circumstances find the defendant guilty of murder. The instruction is further assigned as error for all the reasons set out in ground numbered 4.

In the last ground is assigned as error the charge that "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder," "without more, because words, threats, or menaces may justify the killing if the circumstances are such as to arouse the fears of a reasonable man that a felony is about to be committed upon him."

We have very carefully reviewed the brief of the evidence in

this case and have more than once read and studied the charge of the court. 'We realize the meaning and force of the several criticisms embodied in the various exceptions to which reference is made in the statement of facts. However, there was no timely request invoking an instruction from the court upon the subject of mitigation as one of the rights of the accused as deducible from the language employed in section 75 of the Penal Code, nor any request that the jury be instructed that though one would have no right to avenge a past injury or outrage upon his wife, and in such an instance would be guilty of murder if he killed the assailant, the jury might nevertheless consider the circumstances of the particular case and ascertain whether the accused was acting, not in revenge, but under the sudden impulse of irresistible passion, and that if the jury so found, the defendant might be convicted of voluntary manslaughter. The instructions of the court correctly stated abstract principles of law, except that contained in the special ground numbered as second 3, wherein the judge instructed the jury that the law will sometimes excuse the husband for slaying the seducer of his wife after the guilty act is committed, etc. This is not sound law, for a homicide under these circumstances is never justifiable. But the instruction was favorable to the accused. His counsel insists that in any event it was error and extremely prejudicial, because of the use of the word "sometimes;" but we can not concur in this view, because as a matter of law a homicide, unless committed for the purpose of preventing an impending wrong, is never justifiable or excusable, unless it is the result of accident or misadventure. Under the well-settled rule that a correct statement of a pertinent principle of law is not erroneous because the judge, in the absence of a request, omits to charge something more which might be beneficial to a party, we can not say that the judge erred in overruling the motion for a new trial.      *Judgment affirmed. All the Justices concur.*